THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIA S. DIAZ-BIGIO,
Plaintiff,

v.

MUNICIPALITY OF SAN JUAN, et al.,
Defendants.

Civil No. 06-1704 (ADC)

## OPINION AND ORDER

Plaintiff, María S. Díaz-Bigio ("Díaz" or "plaintiff"), a former employee of the Health Department of the Municipality of San Juan ("Health Department"), filed this action against the Municipality of San Juan ("San Juan") and the Honorable Jorge Santini ("Santini"), in his personal and official capacity as the Chief Executive (Mayor) of San Juan;. Also sued in their personal and official capacity were: Dr. Alfredo Escalera ("Escalera"), Executive Director of the Health Department and as Deputy Mayor; Mrs. Maritza Aguilar-Jusino ("Aguilar"), Director of the Human Resources Department of San Juan; Mr. Jorge Colomer-Montes ("Colomer"), Secretary of Administration of San Juan; Mr. Elmer Sauri-Santiago ("Sauri"), Director of the Internal Audit Office of San Juan; and other anonymous defendants (collectively, "defendants") alleging violations of her constitutional rights and various Puerto Rico laws. **Docket No. 1.**

Now before the court is defendants' Motion for Summary Judgment, defendants' Statement of Uncontested Material Facts in Support of Motion for Summary Judgment; plaintiff's Opposition to Defendants' Motion for Summary Judgment; plaintiff's Opposition to defendants' Statement of Uncontested Material Facts in Support of Motion for Summary Judgment; plaintiff's Additional Statement of Facts[1]; and defendants' Reply to plaintiff's

---

[1] Plaintiff improperly filed her Additional Statements of Uncontested Facts within her Opposition to Defendants' Statement of Uncontested Facts. **Docket No. 130.** The court has deemed admitted those facts that were properly supported and unopposed.

Opposition to Memorandum of Law in Support of Defendants' Motion for Summary Judgment.[2] **Docket Nos. 108, 111, 112, 127, 129, 130, 151.** At issue is whether plaintiff's allegations and proffered evidence support: (1) a cause of action for violations of the First, Fifth and Fourteenth Amendments pursuant to 42 U.S.C. Section 1983 ("Section 1983"); (2) a cause of action against San Juan; (3) a cause of action for conspiracy; (4) an award of punitive damages; (5) whether the defendants' are shielded by qualified immunity; (6) whether the court has subject matter jurisdiction of plaintiff's claims; and (7) whether the supplemental claims should be dismissed along with the federal claims.

## I. Factual Background

The following facts are taken from the parties' submissions and the documentary evidence submitted, read in a light most favorable to plaintiff. **Docket Nos. 112, 130, 127, 145, 151.** In and around August 2004, plaintiff was a career employee in a position as Medical Social Worker at the Health Department. **Docket No. 112, ¶1.** Plaintiff was president of "Hermandad de Empleados de la Salud del Municipio de San Juan" ("the Brotherhood"), a labor organization whose members are public employees of different public health facilities, including the facilities of San Juan. **Docket No. 2, ¶13.** Also in or around August 2004 the defendants were employed in various positions in San Juan: Santini was the Mayor of San Juan, Escalera was the Executive Director of the Health Department, Aguilar was the Director of Human Resources, Colomer was the Secretary of Administration and Sauri was the Director of the Internal Audit Office. **Docket No. 112, ¶¶2-5; Docket No. 2, ¶6.**

In August 2004, plaintiff made several remarks to the press indicating that Escalera

---

[2] Defendants' also submitted a "Reply to Plaintiff's Objections to Defendants' Statement of Uncontested Material Facts." **Docket No. 150.** Such a submission is not allowed by Rule 56 and will not be considered by this court.

had economic interests in a corporation which provided health services to San Juan.[3] **Docket No. 112, ¶6.** Also in 2004, plaintiff filed complaints with various agencies regarding reprisals against her by Escalera. **Docket No. 130, ¶¶ 11-12.**

On August 17, 2004, Santini requested that an investigation be opened regarding an "alleged conflict of interest by Dr. Alfredo L. Escalera, Municipal Health Services Executive Director." **Docket No. 127, at Ex. 3.** From the investigation it was ultimately determined that the comments made by plaintiff regarding Escalera's economic interests were "groundless." **Docket No. 127, at Ex. 6.** By letter dated September 20, 2004, signed by Aguilar, San Juan filed administrative charges against plaintiff and informed her of its intent to dismiss her from her career position. **Docket No. 112, ¶26.** The letter specifically summarized the comments of August 2004 regarding Escalera, stating that plaintiff violated several regulations defining the duties and obligations of an employee, and cited plaintiff's failure to appear in response to a citation for an administrative procedure as behavior subject to disciplinary action. **Docket No. 127, at Ex.2.** The letter afforded plaintiff the right to request an administrative hearing before San Juan's Commission for the Processing of Claims Involving Personnel Affairs. On December 6, 2004, an administrative hearing took place. **Docket No. 127, at Ex. 2.** Plaintiff attended, with counsel, and asserted that she would not present any evidence or testimony on her behalf because there was an ongoing investigation before the Government Ethics Office over the alleged conflict of interests by Dr. Escalera. **Docket No. 112, ¶27.** By letter dated June 28, 2005, signed by Colomer, plaintiff was dismissed from her position. **Docket No. 127, at Ex. 16.** The dismissal letter again summarized plaintiff's statements regarding Escalera as well as plaintiff's failure to appear upon citation. **Docket No. 127, at Ex. 16.**

---

[3] Plaintiff also alleges that her termination was in retaliation for her public comments regarding the Bariatric Surgery Program of San Juan. However, the facts regarding these comments are in dispute between the parties and will not be considered by this court.

## II. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008) (*citing* Fed. R. Civ P. 56(c)). When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Cox v. Hainey*, 391 F.3d 25, 27 (1st Cir. 2004). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000) (quoting *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). In addition, the "absence of evidence on a critical issue weighs against the party—be it either the movant or nonmovant—who would bear the burden of proof on that issue at trial." *Alamo-Rodríguez v. Pfizer Pharma.*, 286 F. Supp. 2d 144, 151 (D.P.R. 2003) (citing *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir. 2001)).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must then set forth specific facts showing that there is a genuine dispute for trial. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson*, 522 F.3d at 175 (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008). To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez*, 247 F.3d at 317 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López-*

*Rosario*, 134 F.3d 28, 33 (1st Cir. 1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. If the court finds that a genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment.

### III. Discussion

#### A. Section 1983 Claims

Section 1983 creates no independent substantive rights, but rather, provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).[4] In order to sustain an action under Section 1983, a plaintiff must establish: (I) that defendants acted under color of state law; (ii) that plaintiffs were deprived of federally protected rights, privileges, or immunities; and (iii) that defendants' alleged conduct was causally connected to the plaintiff's deprivation. *Gutiérrez-Rodríguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989). To establish a "but for" causal connection the plaintiffs must show that the defendant was personally involved in the constitutional violation, *see Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 n. 58 (1978), and that the conduct was either intentional, grossly negligent, or amounted to reckless indifference to the plaintiffs' constitutional rights. *See Simmons v. Dickhaut*, 804 F.2d 182, 185 (1st Cir. 1986). Only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable. *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005).

With regards to the present case, it is undisputed that the conduct of any defendant was "under the color of law" as all defendants are officials of the Municipality of San Juan and

---

[4] Section 1983 applies to the Commonwealth of Puerto Rico and its instrumentalities with the same force as to any state. *See Deniz v. Mun. of Guaynabo*, 285 F.3d 142, 146 (1st Cir. 2002); *Martínez v. Colón*, 54 F.3d 980, 984 (1st Cir. 1995).

they acted in their capacity as such. *See West v. Atkins*, 487 U.S. 42, 49 (1988). We discuss each of plaintiff's alleged violations below:

### 1. First Amendment

While public employees do not lose their First Amendment rights to speak on matters of public concern simply because they are public employees, these rights are not absolute. *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Curran v. Cousins et al.*, 509 F.3d 36, 44 (2007). Courts determining whether a First Amendment violation has taken place conduct an initial two-step inquiry. The court must consider: (1) whether the employee spoke as a citizen on a matter of public concern; and (2) whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Only if the court determines both that the employee spoke as a citizen on a matter of public concern and that the government had no adequate justification does the court proceed to the final inquiry: whether the plaintiff can show that the protected expression was a substantial or motivating factor in the adverse employment decision. *Curran*, 509 F.3d at 45. If the employee succeeds in establishing a causal relationship, the burden of persuasion shifts to defendants to prove by a preponderance of evidence that the adverse employment action would have been taken even in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Here it is undisputed that in August/September of 2004, plaintiff accused Escalera, through public comments, of having improper economic ties to a corporation that provided health services to the Municipality. **Docket No. 112**, ¶6. Accordingly, the court finds that the first step of the inquiry is satisfied.[5] Issues of corruption and official malfeasance are topics

---

[5] The court finds that whether plaintiff spoke as a citizen or as the president of the Brotherhood makes no difference to the First Amendment analysis. What is clear is that plaintiff's comments were not made as part of her official duties as a medical social worker. *See Garcetti*, 547 U.S. at 422 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes. . . .")

that are inherently matters of public concern, therefore, no further analysis into the form and context of plaintiff's statements is necessary. *Curran*, 509 F.3d at 46. While defendants' motion makes much of the fact that plaintiff's statements were unsubstantiated and found to be untrue, the truthfulness of the statements is immaterial to the current analysis unless it can be shown that plaintiff knowingly or recklessly made the false statements. *Perez v. Pierluisi*, 339 F.3d 43, 55 (1st Cir. 2003). Defendants have failed to do so on the current record.

Having found that plaintiff's statements constitute protected speech, the court must now balance the value of the statements against the employer's legitimate government interest in "preventing unnecessary disruptions and inefficiencies in carrying out its public service mission." *Pérez*, 339 F.3d at 50; *Garcetti*, 547 U.S. at 419. While an employer need not show an *actual* adverse effect in order to terminate an employee, the disruption alleged must be attributable to the exercise of the employee's First Amendment right to speak out on a subject. *Curran*, 509 F.3d at 49; *Perez*, 339 F.3d at 55. Although plaintiff's notice of intent to terminate letter indicates that she had violated the municipal code specifically rules forbidding action that would "adversely affect the trust of the public in the integrity and honesty of governmental institutions," this does not adequately show the adverse effect, disruption or consequences of plaintiff's statements and defendant has provided this court with no further evidence. **Docket No. 127-2** at 3; *see also Rivera-Jiménez v. Pierluisi*, 362 F.3d 87, 94 (1st Cir. 2004). Based on the current record, no further determinations can be made regarding plaintiff's First Amendment claims. Accordingly, defendants' summary judgment motion as to the First Amendment claims as to all defendants is **DENIED**.

### 2. Fifth Amendment

Plaintiff's opposition and additional statement of uncontested facts contain no mention of her claims under the Fifth Amendment, as such defendants' motion as to this claim is deemed unopposed. This, however, does not end the court's inquiry. Plaintiff's Fifth Amendment claim will be considered in light of the current record before the court viewing

the uncontested facts in the light most-favorable to the non-moving party. *Sánchez-Figueroa v. Banco Popular*, 527 F.3d 209, 212 (1st Cir. 2008).

It is clearly established that the Fifth Amendment applies only to actions of the federal government. *Martínez-Rivera v. Ramos*, 498 F.3d 3, 9 (1st Cir. 2007). It is undisputed that plaintiff has failed to allege that federal actors were involved either directly or indirectly in the alleged conduct. Because plaintiff has failed to state a Fifth Amendment claim, defendants' summary judgment on plaintiff's Fifth Amendment claim is **GRANTED** as to all defendants.

### 3. Fourteenth Amendment

Under the Fourteenth Amendment plaintiff alleges both, equal protection and due process violations. Defendants move to dismiss both. While plaintiff opposes defendants' motion with regards to the due process violations, the opposition is silent as to the equal protection claim. As such, defendants' summary judgment motion as to plaintiff's Fourteenth Amendment equal protection violations is deemed unopposed.

As with the Fifth Amendment claim, the court is obligated to review the record on plaintiff's equal protection claim. *Sánchez-Figueroa v. Banco Popular*, 527 F.3d 209, 212 (1st Cir. 2008). To establish an equal protection claim plaintiff must show that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007). Such showing requires the identification and relation of specific instances where persons similarly situated in all relevant aspects were treated differently. *Id.* (citations omitted). Plaintiff has not made the requisite showing, in fact, the conclusory assertion that defendants "discharged plaintiff in retaliation for her being the President of the 'Hermandad'" constitutes the entirety of plaintiff's evidence. **Docket No. 2**, ¶30. While adequate for pleading purposes, plaintiff's statement does not rise to the level of a triable issue of fact. Therefore, Defendants' motion for summary judgment as to plaintiff's equal protection claims as to all defendants is

**GRANTED.**

Plaintiff's due process claims fare no better despite the arguments in opposition. There is no dispute that plaintiff had a property interest in her employment and that plaintiff was deprived of this interest. Thus, the sole issue before this court is whether plaintiff was deprived of such property interest without due process of law.

Due process requires that, at a minimum, plaintiff be given some kind of hearing and an opportunity to respond to the allegations against her. *Torres-Rosado v. Rotger-Sabat*, 335 F.3d 1, 10 (1st Cir. 2003). A review of the record shows that plaintiff was accorded due process. On September 20, 2004, plaintiff received a letter informing her of the administrative charges against her, the employer's intent to dismiss and was placed on notice of her right to request an administrative hearing. **Docket No. 127**, at Ex.2. On December 6, 2004, a hearing took place where plaintiff was represented by legal counsel but plaintiff declined the opportunity to present any evidence or testimony on her behalf because there was an ongoing investigation before the Government Ethics Office. **Docket No. 112, ¶27**.

Plaintiff's opposition challenges the charges against her regarding her failure to respond to the citations–this however, is irrelevant to the court's due process analysis. The proper place to lodge such challenges would have been in the December 6, 2004 hearing, not the current suit. As the requirements of due process were satisfied, defendants' motion for summary judgment as to plaintiff's due process claims is **GRANTED** as to all defendants.

B.  **Qualified Immunity**

Public officials are entitled to qualified immunity from damages in a Section 1983 claim where a reasonable officer at the time and under the circumstances surrounding the action could have viewed it as lawful. *Jordan et al. v. Carter*, 428 F.3d 67, 71 (1st Cir. 2005). Courts determine qualified immunity under a two part test: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was "clearly established" at the time of the defendant's alleged violation. *Maldonado v. Sol*

*Luis Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009).

In the present case there are material facts in dispute regarding the violation of plaintiff's First Amendment rights. Therefore, the court cannot, at this stage, determine whether defendants are eligible to receive qualified immunity. Even assuming that a First Amendment violation had been established, the court would be hesitant to grant summary judgment as a constitutional rule that turns upon a fact-intensive balancing test is rarely considered "clearly established" for purposes of qualified immunity. *Fabiano v. Hopkins*, 352 F.3d 447, 457 (1st Cir. 2003). Defendants' motion for summary judgment as to qualified immunity for the individual defendants is **DENIED**.

### C. Municipal Liability

Generally, a municipality cannot be held liable under Section 1983 for the torts of an employee on the basis of an employer/employee relationship with the tortfeasor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). However, municipal liability may attach where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. *Aviles-Alicea v. Municipio de San Juan et al.*, 519 F. Supp. 2d 226, 240 (D.P.R. 2006). Under Puerto Rico law, the actions of a Mayor "constitute the official policy of the municipality." *Id.* (citations omitted). Also, courts have repeatedly recognized that Mayors in Puerto Rico are the government officials ultimately responsible for the employment decisions of the municipality. *Rodríguez-García v. Mun. of Caguas*, 495 F.3d 1, 13 (1st Cir. 2007). Therefore, a Puerto Rico municipality can be held liable for the unconstitutional discharge of its municipal employees by the Mayor. *Avile-Alicea*, 519 F. Supp. 2d at 240.

In the present case material issues of fact regarding plaintiff's claim for First Amendment violations still exist; therefore, the court cannot determine municipal liability. The motion for summary judgment on municipal liability is **DENIED**.

### D. Conspiracy

Within the civil rights context, a conspiracy cause of action can be brought pursuant to either or both 42 U.S.C. Sections 1983 and 1985. In the present case it is unclear under what statute plaintiff has alleged conspiracy: defendants' motion does not specify a statute, plaintiff's opposition refers to Section 1983, plaintiff's complaint seems to invoke both Sections 1983 and 1985 and neither party has provided the court with any undisputed facts pointing towards the existence of a conspiracy. In an abundance of caution, the court has reviewed the parties' submissions and the complaint under both statutes and finds that plaintiff has failed to offer any evidence establishing the threshold requirements of conspiracy under either Sections 1983 and 1985.

Pursuant to Section 1983, a civil rights conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages." *Torres-Rosado v. Rotger-Sabat*, 204 F. Supp. 2d 252, 266 (D.P.R. 2002) (citations omitted). To survive summary judgment, a plaintiff must set forth facts detailing the relationship or nature of the cooperation between the actors including how the conspiracy was made, specific allegations of a meeting of the minds and overt acts. *Id.* Simply alleging that defendants acted jointly and in concert and under color of law is insufficient. *Id.* (*citations omitted*). Plaintiff's complaint, which alleges that defendants acted "in concert" without any additional facts, falls woefully short. More importantly, plaintiff's opposition and the "Additional Statements of Uncontested Facts" provide no additional information. Plaintiff has provided no evidence indicating any triable issue of fact as to the existence of a conspiracy.

Plaintiff's claim under Section 1985 is similarly inadequate. A conspiracy under Section 1985(3) must be motivated by some "racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Pérez-Sánchez v. Pub. Bldg Auth.*, 531 F.3d 104, 107-108 (1st Cir. 2008). Nothing in plaintiff's submissions in the present motion or in her complaint

provide any evidence establishing any type of racial or otherwise class-based bias.[6] As such, defendant's motion for summary judgment is **GRANTED** as to the conspiracy causes of action under Sections 1983 and 1985 against all defendants.

### E. Damages

Acknowledged by both parties, punitive damages are not available as a remedy against either the municipality or the defendants in their official capacity. *See* **Docket No. 111**, at 21; **Docket No. 129**, at 22. Accordingly, the court **GRANTS** defendants' motion with regards to an award of punitive damages against the municipality of San Juan and the defendants in their official capacity. This court makes no determination as to the availability of punitive damages due to personal liability.

### F. Subject Matter Jurisdiction

Defendants contends that this court lacks subject matter jurisdiction over plaintiff's claims if her comments were made as President of the Brotherhood. This argument fails. The section of the statute quoted by defendants states that "[t]he Board is empowered. . . to prevent any person from engaging in any unfair labor practice affecting commerce. While arguing that the statute applies to the current case, defendant makes no factual argument as to how plaintiff or defendants engaged in unfair labor practices affecting commerce. Defendants' summary judgment motion as to subject matter jurisdiction is denied. *See Guerrero v. Muñoz-Muñoz*, 2002 U.S. Dist. Lexis 20236, *41 (D.P.R. 2002) ("Judges are not expected to be mind-readers. . . a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.").

### G. Supplemental Claims

Defendants argue that all claims should be dismissed, including the Commonwealth tort claim. However, plaintiff's First Amendment claim survives. Since their Commonwealth

---

[6] While plaintiff failed to make the argument, the court notes that it has been explicitly determined that Section 1985 does not afford protection against discrimination on the basis of union membership. *See Pérez-Sánchez*, 531 F.3d at 108 (citing *United Bros of Carpenters and Joiners v. Scott*, 463 U.S. 825 (1983)).

claims spring from the same nucleus of operative facts, the court finds that the federal and Commonwealth claims are part of the same case or controversy for the purposes of 28 U.S.C. § 1367. *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 833 (1st Cir. 1997) ("A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts.") (citations omitted). Thus, defendants' request that the court dismiss all plaintiff's supplemental Commonwealth claims is **DENIED**.

## IV. Conclusion

Based on the foregoing, defendants' motion for summary judgment (**Docket No. 108**) is **GRANTED in part** and **DENIED in part** as follows:

1. Defendants' motion for summary judgment as to plaintiff's Section 1983 claim for violation of the First Amendment as to all defendants is **DENIED**.
2. Defendants' motion for summary judgment as to the Fifth Amendment claim is **GRANTED** and therefore, plaintiff's Section 1983 claim for violation of the Fifth Amendment as to all defendants is dismissed with prejudice.
3. Defendants' motion for summary judgment as to the Fourteenth Amendment is **GRANTED** and plaintiff's Section 1983 claim for violation of the Fourteenth Amendment equal protection and due process as to all defendants is dismissed with prejudice.
4. Defendants' motion for summary judgment as to Qualified Immunity as to all defendants is **DENIED**.
5. Defendants' motion for summary judgment as to municipal liability as to defendant San Juan is **DENIED**.
6. Defendants' motion for summary judgment as to the conspiracy claims is **GRANTED** and plaintiff's conspiracy claims against all defendants are dismissed with prejudice.

7. Defendants' motion for summary judgment regarding plaintiff's for punitive damages is **GRANTED**. Therefore, plaintiff's claims for punitive damages as to all defendants, in their official capacities, are dismissed with prejudice.

8. Defendants' motion for summary judgment for lack of subject matter jurisdiction is **DENIED**.

9. Defendants' motion for summary judgment as to the Commonwealth (supplemental) claims is **DENIED**.

**SO ORDERED.**

At San Juan, Puerto Rico, this 20 day of October, 2009.

S/HARRY D. LEINENWEBER
Senior District Judge